■ In the Matter of the Claim of JAMES LESPERANCE, Appellant, v GULF OIL COMPANY et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [731 NYS2d 535] —Crew III, J. P. Appeal from a decision of the Workers' Compensation Board, filed April 3, 2000, which established claimant's average weekly wage.

Prior to retiring in 1983, claimant was employed for a number of years as a truck driver and delivery person for Gulf Oil Company. In 1990, claimant accepted a part-time maintenance position with Susse Chalet. Thereafter, in September 1991, claimant was diagnosed with a torn rotator cuff in his left shoulder; a similar diagnosis subsequently was made with respect to claimant's right shoulder, with both conditions necessitating surgical repairs. Claimant applied for workers' compensation benefits and, ultimately, the Workers' Compensation Board ruled that claimant's bilateral shoulder condition was an occupational disease and fixed the date of disablement as September 3, 1991. The Board further determined that such occupational disease was attributable to claimant's employment with both Gulf and Susse Chalet and, as such, Susse Chalet could pursue its apportionment remedies under Workers' Compensation Law §§ 44 and 46. The instant appeal is from a subsequent Board decision, filed April 3, 2000, which established claimant's average weekly wage based solely upon his employment with Susse Chalet.

The crux of claimant's argument on appeal is that because his occupational disease was attributable to the work performed for both of his prior employers, thereby subjecting the overall compensation award to apportionment, his average weekly wage likewise should be based upon his earnings at both Gulf and Susse Chalet. In view of the degenerative nature of his disease and the vast disparity in the length of his respective employments (in excess of 25 years for Gulf versus 11 months for Susse Chalet), claimant argues, it is only logical that his average weekly wage take into consideration his employment with Gulf. This argument, while novel, disregards the underlying statutory scheme.

Workers' Compensation Law § 2 (9) defines "wage" as "the

money rate at which the service rendered is recompensed under the contract of hiring in force *at the time of the accident*" (emphasis supplied). Similarly, Workers' Compensation Law § 14 (1) governs the computation of an injured employee's average weekly wages where, as here, such employee has "worked in the employment in which he was working *at the time of the accident,* whether for the same employer or not, during substantially the whole of the year immediately preceding his injury" (emphasis supplied). Claimant's injury or "accident" occurred on September 3, 1991, the date of disablement established by the Board's prior decision (*see,* Workers' Compensation Law § 38), at which time claimant had been working for Susse Chalet for approximately 11 months. Thus, under the plain language of Workers' Compensation Law § 14 (1), it was entirely appropriate for the Board to base claimant's average weekly wage solely upon his employment with Susse Chalet. To the extent that claimant argues that the remedial nature of the Workers' Compensation Law mandates consideration of the wages earned during his employment with Gulf, we need note only that while the statute does provide for the "pooling" of wages "[i]f the injured employee is concurrently engaged in more than one employment at the time of the injury" (Workers' Compensation Law § 14 [6]), there is no similar provision governing successive employers. Accordingly, the Board's decision is affirmed.

Spain, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the decision is affirmed, without costs.